LEONARD WHITE *et al.,* plaintiffs in error, *v.* BY WILSON, defendant in error.

*Error to Hardin.*

An affidavit in an attachment suit set forth "that the said White and Sloo were about to remove their property from this State to the injury of Wilson." This fact was traversed by plea in abatement, and under this issue, the defendant offered to prove that one of them had sufficient unincumbered personal property in the State to discharge the plaintiff's demand. The evidence was objected to and excluded by the Court: *Held,* that the Court erred in excluding the evidence.

To sustain an attachment on the ground that the debtor, "is about to remove his property from this State to the injury of such creditor," two things must concur: *first,* the debtor must be about to remove his property from the State, and *second,* such removal, if effected, must be to the injury of the creditor. The single fact that he is about to remove his property from the State will not not justify a creditor in seizing it by attachment.

ATTACHMENT, in the Hardin Circuit Court, brought by the defendant in error against the plaintiffs in error, and heard before the Hon. William A. Denning and a jury, at the May term, 1848, when a verdict and judgment were rendered for the plaintiff below for $208·57½.

The facts material to the issue are adverted to by the Court in their Opinion.

White *v.* Wilson.

*W. B. Scates,* for the plaintiffs in error.

1. The statute predicating an attachment upon the *removal of property to the injury* of another does not contemplate nor intend that every removal of property in the fair and regular course of commerce and trade is to the injury of creditors.

2. It being in proof that plaintiffs had been for some time previous in a regular course of trade with the company to whom the iron was sold, and this iron, even if belonging to them, being about to be removed in such regular course of trade—any evidence tending to show the individual solvency, within the jurisdiction, of one of the partners, whose property would be liable upon failure of partnership effects, would rebut and disprove the allegation of injury in the affidavit and issue.

3. They were material allegations in the affidavit, and traversed by the plea, that the property belonged to plaintiffs; that it was about to be removed; and that that removal was injurious to the defendant. He cannot select any particular property and maintain that its removal will *injure* him so as to sustain an attachment, whilst other property, partnership or individual, remains within the jurisdiction, which may be reached by a general judgment upon personal service, and which could have been had in this case.

This is a new clause in the attachment law and ought to receive a sound and equitable construction, which will not interrupt the fair course of trade, and so work injustice. Rev. Stat. 63, § 1.

*T. G. C. Davis,* for the defendant in error.

The Opinion of the Court was delivered by

Trumbull, J. Wilson commenced an action of *assumpsit* by attachment against White & Sloo, as partners. The attachment was levied upon a quantity of pig iron. The affidavit upon which the writ of attachment issued, after setting forth the nature and amount of the indebtedness, al-

leged, "that the said White & Sloo were about to remove their property from this State to the injury of Wilson." The plaintiffs in error filed a plea in abatement traversing the fact of their being about to remove their property from the State to Wilson's injury. The issue upon this plea was found against the plea, and judgment entered that plaintiffs in error answer over, which they did, by filing a plea of *non assumpsit*, the issue upon which being determined against them, judgment was rendered in favor of the defendant in error for $208·57½.

All the evidence before the jury upon the trial of the issue in abatement is preserved by bill of exceptions. This evidence shows that the plaintiffs, previous to the commencement of this suit, had been engaged in making pig iron in the county of Hardin, and in trading with a firm in Cincinnati or Louisville. Some fifty tons of pig iron, being all the personal property which the plaintiffs owned in said county at that time, was attached. The plaintiffs in error offered to prove by one Robinson, that one of them owned a large amount of personal property in this State free from any incumbrance, and more than sufficient to discharge said Wilson's demand, which testimony was objected to by the defendant in error, and excluded by the Court as improper. This decision of the Court is assigned for error, and it is the only question before us, the other errors having been abandoned upon the argument.

Admitting that the plaintiffs were about to remove the property attached from the State, the question is, whether the testimony of Robinson should not have been permitted to go to the jury as tending to show that such removal would not operate to the injury of Wilson.

The provision to the eighth section of the Attachment Act authorizes a plea in abatement traversing the facts in the affidavit, and the issue in this case was proper. In determining npon the relevancy of the testimony offered, it becomes necessary to put a construction upon that clause of the statute permitting a creditor to sue out an attachment when his debtor "is about to remove his property from this State

to the injury of such creditor." To sustain an attachment under this provision of the statute, two things must concur: *first*, the debtor must be about to remove his property from the State, and *second*, such removal, if effected, must be to the injury of the creditor.

The single fact that a debtor is about removing his property from the State will not justify a creditor in seizing it by attachment; if it would, dealers in the produce of the country, and who are engaged in forwarding it to markets out of the State, would hold their property at all times and while engaged in their ordinary business, liable to be seized by attachment to the great embarrassment of the trade and commerce of the country. It cannot be supposed that the Legislature intended to put into the hands of every creditor the means of so greatly annoying his debtor, and interrupting the ordinary business of the country, unless the acts of the debtor were calculated in some way to prove injurious to the creditor's rights. Why should a creditor be permitted to harass his debtor by a proceeding that can do the creditor no good, while it may do the debtor great harm? The process by attachment was never designed to be used where the creditor could reach the person and property of his debtor by the ordinary Common Law process, but only in cases where the debtor resides out of the State; or is about placing his property beyond the reach of his creditor proceeding in the ordinary way. It became, then, material to inquire in this case whether, if the property about to be removed by the plaintiff, had been taken out of the State, such removal would have operated to the injury of the creditor. How was this to be ascertained? We answer, from the circumstances of the case. Another provision of the statute authorizes an attachment to issue when a debtor is about to depart from the State, with the intention of having his effects removed from the State. How is this intention to be made to appear? By the acts and declarations of the debtor, and all the various circumstances by which men judge each others' intentions. So in this case, any facts or circumstances tending to show that the attaching creditor would not be injured in

the collection of his claim, by the removal from the State of the property which the plaintiffs were about to remove, were proper to be given in evidence upon the issue in abatement. Such were the facts which the plaintiffs proposed to prove by Robinson. If Sloo, one of the plaintiffs, had an abundance of unincumbered property within the State to satisfy the claim of Wilson, and out of which he could make his debt, it was surely a circumstance tending to show that the removal from the State of the particular property attached, in the regular course of business, was not to the injury of the attaching creditor. The joint property of the firm of White & Sloo, and the individual property of the members of said firm were both liable to be taken in satisfaction of the defendant's claim, and the plaintiffs offered to show that the individual property of Sloo was more than sufficient for that purpose. This they should have been permitted to do in support of the plea in abatement, and because they were not, the judgment of the Circuit Court is reversed and the cause remanded for a new trial upon the issue in abatement.

*Judgment reversed.*